PETER STAUFFER, Administrator of ROSE STAUFFER, Deceased, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division One, May 31, 1912.

1. PLEADING: General Denial: Specifically and Generally. To deny specifically without specifying is a novelty in pleading. An answer denying "each and every allegation in said petition contained, both generally and specifically," would challenge attention, if the question were vital.

2. NEGLIGENCE: Demurrer: At Close of Case. Where defendant does not stand on its demurrer at the close of plaintiff's case, but goes on and puts in its own case, a final demurrer searches all the testimony, to see if plaintiff's case was not aided by defendant's proof.

3. ————: ————: What Things are Taken as True. A demurrer to plaintiff's case accepts plaintiff's evidence as true, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason. It also takes defendant's testimony as untrue where contradicted by plaintiff's; and it leaves to the jury the weight due the testimony, the credibility of witnesses, and to reconcile contradictions, if any, in the proof. It, therefore, allows to plaintiff's case every reasonable inference of fact arising on all the proof.

4. ————: ————: In View of the Applicable Law: Injury to Passenger. A carrier is under the duty of exercising a very high degree of care to its passengers; and when a demurrer to plaintiff's case is interposed in a suit for damages where plaintiff while a passenger on defendant's car was injured, it must be ruled in view of that rule of law.

243 Sup.—20

5. ————: **Carrier and Passenger: Degree of Care.** A street railway carrier of passengers is not an insurer of the safety of its passengers, but its contractual and legal duty is to carry safely. The standard of care rises with the hazard.

6. ————: **Excesive Verdict: $10,275: Aneurism in Young Unmarried Woman.** Plaintiff, a robust healthy girl, twenty-six years of age, while a passenger on defendant's street car, was injured by its collision with a steam roller. She lost weight and the color of health, and became nervous and depressed; she could labor no more; womb troubles, from which she had previously been free, set in; she had careful medical attention from the first; and about three weeks after the accident, a faint aneurism, or arterial tumor, was discovered in her chest, whose pulsations continued to increase until the time of the trial three years later, when they could be heard outside her dress by the unaided ear. Aneurism can be traced to a shock, an injury or a strain and is likely to arise in that way, and is incurable, progresses steadily, and forbids strong exertion or intense excitement under pain of instant death as a penalty, and also childbirth and hence marriage. *Held,* that a verdict for $10,275 was not excessive.

7. **EVIDENCE: Erroneous: Withdrawal by Instruction.** Where it is not clear that the testimony of the witness was not admissible, and respondent withdrew it by an instruction, it will be held that the error, if any, was cured.

8. ————: **Refused: Cross-Examination of Plaintiff: Name of Escort.** Plaintiff, a young woman, was injured by a street car collision, and when her deposition was taken by defendant, on the advice of her attorney she declined to tell who her escort was. At the trial the deposition was introduced in evidence by defendant, and the court sustained an objection to a question inquiring if she remembered she refused at the taking of her deposition to tell who her escort was. *Held,* that there was no reversible error in the ruling.

9. **TRIAL: Remarks of Attorney: No Reference Thereto in Motion for New Trial.** An omission from the motion for a new trial of all reference to certain remarks made by plaintiff's attorney in his argument to the jury, precludes any consideration of said remarks on appeal.

10. ————: ————: **No Exceptions.** Where there was no objection to certain remarks of the plaintiff's attorney, no ruling and no exception, those remarks, though of themselves objectionable and even inflammable, will not work a reversal, where the verdict is not excessive and the case is not a close one.

11. ————: ————: **Cured by Court.** Where the court characterized remarks by respondent's attorney as not proper and

pointedly told the jury to disregard them, no reversal will be allowed on account of those remarks, in a case that is not close on the facts.

12. ————: Passenger and Carrier: General Allegation: Burden. Where the petition counts on general negligence, then, given the relation of carrier and passenger, a collision and an injury to the passenger, the maxim *res ipsa loquitur* applies, negligence is presumed prima facie, and the burden is shifted to defendant to show that the injury was not the product of its negligence. And a charge in substance that the car was negligently run into a steam roller on the track and was negligently caused to collide with said roller with force and violence is a general charge of negligence; and plaintiff, by going on at the trial and proving specific acts of negligence, did not lose the right to have the maxim *res ipsa* applied to the case or to invoke the presumption of law arising from that maxim, namely, that negligence is presumed on proof of the relation of carrier and passenger, of the collision, and of a resulting injury to the passenger.

13. ————: Instruction: Passenger and Carrier: Humanitarian Doctrine not Applicable. That an instruction carries phraseology familiar in pronouncements of the humanitarian rule, does not of itself invoke that rule. In a case where plaintiff was a passenger and counts upon an injury caused by the running of the car into a steam roller on the track, that rule is not invoked by an instruction telling the jury that if defendant's motorman saw, or by the exercise of proper care could have seen, said steam roller on the track in time to have stopped said car and avoided the injury, etc.; and, hence, that rule not being invoked, it will not be decided whether or not the rule applies to a case of passenger and carrier.

14. ————: ————: ————: Stopping and Running Car: Difference. There is no substantial difference between running a car so negligently as to cause it to collide with an obstruction on the track, and in running it so negligently that it was not stopped in time to prevent a collision when the collision could have been avoided by the exercise of due care.

15. ————: ————: ————: Specific Negligence: General Allegation. Where the petition, in a suit by a passenger against a carrier, counts on general negligence, an instruction in the language of the petition and properly defining the degree of care the law imposes on defendant, is proper. It need not set out any specific act of negligence. But instructions should be read as a whole, and if specific negligence was required in this case the instructions given for defendant minutely specify them, and indeed reverse the rule of *res ipsa*.

Stauffer v. Railroad.

16. ————: ————: ————: **Damages: All Issues not Included.** An instruction on the damages recoverable is not erroneous because it does not include all the issues plaintiff is required to establish—they being included in others given.

17. ————: ————: ————: ————: **Surplusage Words.** Plaintiff's instruction on the damages she might recover began with the words: "The jury are instructed that the plaintiff claims in her petition that on the 18th day of November, 1904, she was a passenger on the car of the defendant mentioned in evidence; and that while she was a passenger on such car, it came in collision with the steam roller mentioned in evidence." *Held*, that all these words could have been omitted as surplusage, and the instruction without them would have been perfect; but they could have done no possible harm.

18. ————: ————: ————: **Not Required to Prove Negligence: Does not Include Defense.** Where on the facts and under the law, plaintiff is entitled to recover without proving negligence, and the burden is on defendant to show due care and no negligence, an instruction for plaintiff that does not include defendant's defense, is not error; and that is true, although in other instructions plaintiff has handicapped herself, and by still others defendant has handicapped her, by placing on her the burden of proving negligence, when negligence is presumed from proof of the relation of passenger and carrier, a collision and a resulting injury.

19. ————: ————: ————: **Assumption of Relation Not Controverted.** Facts not controverted, but shown to exist and constituting the very basis of the theory of both litigants at the trial, may be assumed in the instructions. An instruction for plaintiff may assume that she was a passenger and that there was a collision, where the whole issue is whether defendant was guilty of negligence in not avoiding the collision, the amount of damages, etc.

20. ————: ————: ————: **Meritorious Case: Material Error.** Where plaintiff has a meritorious case, the judgment will not be reversed unless defendant puts its finger on error materially affecting the merits or affecting its substantial rights.

21. ————: ————: **Cautioning Jury Against Sympathy for Plaintiff.** The fact that plaintiff, mortally hurt and nervously depressed, while on the stand was overcome by weeping and hysteria, and left the stand at the suggestion of the trial judge, who then adjourned court until the next day, and on resuming gave to defendant an option to continue the case over the term, which it declined, is no reason for giving an instruction admonishing the jury against all unusual incidents arising during

the progress of the trial and otherwise reading to them a moral homily on the duty of jurors. Such an instruction would have been an unwarranted comment, as much so as a comment on evidence. Besides, defendant's declination to continue the case over the term closed the incident once for all.

22. ———: ———: **Carrier and Passenger: Obstruction on Track: Right to Assume a Clear Track.** Whatever may be the right of a motorman to assume that a person will not enter the track in front of an approaching car or if on the track will not remain there, he has no right to assume, as betweeen the carrier and a passenger on the car, that a fifteen-ton steam roller approaching the track at a snail's pace and about to cross, seen for two hundred feet away, will stop before going upon the track and wait for the car to pass, or will get across and out of danger of a collision before the car reaches the roller; and an instruction embodying such a doctrine as a defense should be refused. The motorman owes the duty to his passenger to exercise a high degree of care which precludes any presumption or assumption that the roller will get off or stay off. The law does not permit him to take a chance of a collision.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

Affirmed.

*John H. Lucas* and *Ben T. Hardin* for appellant.

(1) The court erred in giving instruction 1 for plaintiff. It submits the case to the jury on an issue not raised by the pleadings, and on acts of negligence not pleaded in the petition, namely, the failure of the agents of defendant in charge of the car to observe the rule of the last chance doctrine. No such negligence is alleged in the petition; nor is there any evidence in the record on which to base that instruction. Unless there is evidence as to the distance in which the car could have been stopped, after the motorman saw, or by proper care could have seen, the roller in or approaching the line of danger, the last chance is not in the case. Schroeder v. Transit Co., 111 Mo. App. 67; Heintz v. Transit Co., 115 Mo. App. 667; O'Farrell v.

Railroad, 136 Mo. App. 353. Nor is the last chance in the case, unless it is pleaded. The negligence pleaded here is that "the agents, servants and employees of defendant in charge of said car, carelessly, negligently and unskillfully ran said car upon which plaintiff was a passenger as aforesaid, into a large steam roller which was on the track of defendant along which said car was running." There is not a word in the petition that said servants knew the roller was on the track, that they "saw, or by the exercise of the care required of them as set out in instruction 2, could have seen said steam roller upon said track in time to have stopped said car and have avoided the injury to plaintiff, but negligently and carelessly failed to stop said car and prevent said injury," as is submitted to the jury by instruction 1. The negligence pleaded is in running the car. The negligence submitted to the jury, in the instruction, is failing to stop the car after they saw, or by proper care "could have seen the roller on the track." The instruction went clear outside of the domain of the petition; it should have been limited to the negligence pleaded. Smith v. Railroad, 126 Mo. App. 120; McGrath v. Transit Co., 197 Mo. 97; Orcutt v. Bldg. Co., 201 Mo. App. 424; Roscoe v. Railroad, 202 Mo. 576; Kirkpatrick v. Railroad, 211 Mo. 68; Beave v. Transit Co., 212 Mo. 331; Miller v. Railroad, 155 Mo. App. 528; Gibler v. Railroad, 148 Mo. App. 475; Detrich v. Railroad, 143 Mo. App. 176; McManamee v. Railroad, 135 Mo. 448; Hesselbach v. St. Louis, 179 Mo. 505. (2) The court erred in giving instruction 2 for plaintiff. It broadens the issues made by the pleadings, and is broader than the petition. The allegations of negligence in the petition being specific, the instruction on the care required of defendant is too general; it covers the entire field of negligence, when it should have been limited to the negligence charged in the petition. It holds defendant to account for any negligent act, whether that act was charged in the pe-

tition or not. Beave v. Transit Co., 212 Mo. 351; Davidson v. Transit Co., 211 Mo. 355; Roscoe v. Railroad, 202 Mo. 576; Orcutt v. Bldg. Co., 201 Mo. 443; Vanhorn v. Transit Co., 198 Mo. 481; McGrath v. Transit Co., 197 Mo. 97; Allen v. Transit Co., 183 Mo. 411; Logan v. Railroad, 183 Mo. 582; Detrich v. Railroad, 143 Mo. App. 176. (3) The court erred in refusing instruction 7 asked by defendant. And it requires no citation of authorities to back it. The courts in all the cases, where a person is driving toward a car track, without the zone of danger, hold this to be the law. And especially was it error to refuse it, in view of plaintiffs instruction 1. (4) The court erred in refusing to permit defendant's counsel to cross-examine plaintiff on her refusal to tell in her deposition who her escort was at the time of her injury. Defendant was entitled to know that fact when plaintiff's deposition was taken. Devoy v. Transit Co., 192 Mo. 220; State ex rel. v. Theisen, 142 S. W. 1088.

*McCune, Harding, Brown & Murphy* for respondent.

(1) The court did not err by giving instruction 1 for plaintiff. The petition charges general negligence in the running of the car into the roller. The instruction is not broader than the petition, but is in harmony with it. Meng v. Railroad, 108 Mo. App. 563; Schroeder v. Transit Co., 111 Mo. App. 67; Roscoe v. Railroad, 202 Mo. 588. (2) The court committed no error by giving instruction 2 for plaintiff. This instruction was the counterpart of instruction 1 and properly defined the degree of care referred to in instruction 1. The jury could not have been led by these instructions. Defendant saw to it that severe instructions were submitted, hedging about its case with every possible barrier. Their attention was particularly drawn to the point limiting the inquiry of

negligence to that of running the car. Counsel is wrong in his assertion that the petition alleges specific acts of negligence. The *res ipsa loquitur* doctrine is present. The petition was drawn on that theory. It alleged general negligence in running the car. Defendant evidently recognized the presence of that theory. It did not ask that the charge of negligence be made specific. Under a charge of general negligence, the defendant must be prepared to meet any kind of negligence in running the car. (3) The court did not err in giving instruction 3 for plaintiff. All parties agree that it was the car that plaintiff was in that hit the roller; otherwise plaintiff would not have been hurt; and that the roller the car hit was the one that was on the track. There being no dispute about the car or the roller that collided, it is not error for an instruction to assume the existence of a fact which is not controverted, and which the parties throughout the trial assume to exist. Davidson v. Railroad, 211 Mo. 321.

LAMM, J.—Rose Stauffer had judgment against defendant in the Jackson Circuit Court for $10,275. Defendant appealed, and plaintiff died. By stipulation here the cause was revived in the name of Peter Stauffer, her administrator.

We are asked to reverse her judgment for error, to-wit:

In refusing a demurrer at the close of plaintiff's evidence and again at the close of the whole case.

In allowing an excessive verdict to stand.

In permitting evidence from Hill, an expert.

In refusing to permit counsel to cross-examine plaintiff about her refusal to answer certain questions propounded to her at the time her deposition was taken.

In the disposition made of certain objections to remarks of one of plaintiff's counsel in closing to the jury.

In refusing and giving instructions.

Any record or facts essential to an intelligent disposition of those propositions will appear under subheads in their discussion.

I. *Of the demurrers (and herein of the pleadings).*

Charging that defendant was operating an electric street railway in Rosedale, Kansas, and that plaintiff was a passenger on one of its cars on the 18th of November, 1904, she states her cause of action to be that: ". . . the agents, servants and employees of defendant in charge of said car, carelessly, negligently and unskillfully ran said car upon which plaintiff was a passenger as aforesaid, into a large steam roller which was on the track of defendant along which said car was running, without any fault or negligence on the part of plaintiff; that said car upon which plaintiff was riding as a passenger as aforesaid, was negligently caused by the agents, servants and employees of defendant to collide with said steam roller with great force and violence, whereby," etc.

The answer reads: "Comes now defendant and for its answer to the amended petition of the plaintiff denies each and every allegation in said petition contained, both generally and specifically. Wherefore defendant prays to be dismissed with its costs."

(Note: While the statute, Revised Statutes 1909, section 1806, allows "a general or specific denial" and permits both to be united in the same answer, it will be observed that without being a statutory donee of power to that end defendant has tried to improve upon the lawmaker's work. What the latter by grace allows to be united in the same writing, defendant mixes together after this fashion: It denies "generally and specifically" by the same stroke of the pen. Hitherto it has been supposed that "a general denial" was one thing and that "a specific denial" was another. The

novelty of making both kinds by twin adverbs spliced by a conjunction, thereby denying "specifically" without *specifying*, would challenge attention if the question were vital.)

On the facts the case runs, on both sides, on the theory that defendant owns and operates a line of electric street cars in Kansas, known as the "Rosedale Line;" that on the 18th of November, 1904, at about ten o'clock p. m. plaintiff, who had been at a church bazaar, with her escort, took passage on one of those cars at the crossing of Shawnee street and Southwest boulevard, north-bound to Kansas City, and paid her fare. There is some conflict on whether she sat on the west or east side, at the rear or towards the middle of the car, but none whatever that the seats ran lengthwise and that the car violently collided three blocks north of Shawnee, at the crossing of Lincoln street and Southwest boulevard, with a fifteen-ton steam street roller. This roller was in the act of crossing the track obliquely and was nearly across at the impact— the car striking the roller's nearest hind wheel with such momentum as to slide the roller north a few inches, break some of its parts and smash the front end of the car. The few passengers aboard were thrown from their seats ("strung out" as one witness put it) towards the front. Plaintiff testified she was thrown from the rear to the front of the car. That she was shocked and injured is not questioned, but the extent of her injuries is in dispute. Not all the eye witnesses saw lights on the roller, but there was satisfactory testimony it had four lighted lanterns displayed, one on each corner— that is, two to the south. There were no arc street lights at Lincoln, but there were two a block off either way. There was also a lantern in the hands of one of the men attending to the roller. As near as we can make out this roller was about fifteen feet from end to end. It had three wheels (rollers), one in front and two behind. While

on a pinch moving smartly yet at work the movement
of the cumberous machine was very slow—something
like (or less than) a man's slow walk. It is shown
that defendant's servants in charge of the car knew
the roller ran day and night and was on that evening,
as it had been for a week before, used in reconstructing
Southwest boulevard at the *locus*. So, there is no dis-
pute but what the motorman saw the roller working
ahead on the trip that night.

On plaintiff's behalf there was testimony tending
to show that when the roller, say, ten feet from the
track, turned to approach it diagonally to cross and
take water at a plug on the other side of the street, the
car was three blocks away and when it got on or to
the track the car was a block or over two hundred feet
away. It is clear the roller was visible to the motor-
man at that distance and thenceforward while cross-
ing. There are facts making it certain that, if credit
is to be given to plaintiff's testimony, the car could
have been stopped after the steam roller came within
striking distance of the track and was crossing over,
and that a collision was avoidable if diligence and care
had been used by the motorman. One of the men
operating the roller testified it would take three or
four minutes, after it got to the track, to cross over.
Usually rocks had to be put in front of the wheel to
keep the roller from sliding on the rail and we infer
from some of the proof that crossing over the track
was a slow affair in the then street conditions. As the
roller was making the turn, as said, the car was in
sight three blocks away taking on passengers. The
car made no stop after taking on plaintiff at Shawnee
street until it struck the roller. Defendant's theory is
that the motorman saw the roller running north in the
same direction his car was going, close to the track but
in the clear; that the car was then going nine or ten
miles an hour, and that, when about fifty or sixty feet
away from the car, the roller turned towards the track

and undertook to cross; that the instant the roller was seen heading across the track the motorman reversed his power and tried his best to stop, but that, by the sudden reversal of the power, the "automatic" or "overhead" blew out cutting off his power, whereat he had recourse to his brake; that he had reduced his speed to two or three miles per hour, but before he could stop he struck the roller. There was testimony sustaining that theory. There was some testimony that the overhead blew out at about the time of the collision, and testimony indicating that the car was going under full head when the crash came—a crash heard in nearby houses.

On such record neither demurrer was well taken.

(1)   Where a defendant does not stand on his demurrer at the close of plaintiff's testimony in chief but goes on and puts in its own case, a final demurrer searches all the testimony, to see if plaintiff's case was not aided by defendant's proof.

(2)   It is trite and good doctrine that a demurrer to plaintiff's evidence accepts that evidence as true, whether contradicted or not by defendant's proof, so long as it is not impossible as opposed to the physics of the case or entirely beyond reason. It takes defendant's testimony as untrue where contradicted by plaintiff's proof. It leaves to the jury to settle the weight due the testimony, the credit due the witnesses and to reconcile contradictions, if any, in proof. So, it allows to plaintiff's case the benefit of every reasonable inference of fact arising on all the proof.

(3)   And where, as here, the question is between a passenger and common carrier on the duty to carry safely, a demurrer to the evidence must be ruled in view of the rule of law that the carrier is under the duty of exercising a very high degree of care to its passenger. To put it in the language of some of the cases: "A high degree of care;" "The utmost degree of care of very prudent persons;" "The greatest

possible care and diligence;" "Great care;" "Such care as a very prudent person would exercise under similar circumstances;" "The highest degree of care that can be reasonably expected of prudent, skilful and experienced persons;" "The highest degree of care practicable among prudent and skilful men in that business." One or another of those propositions (all of them chips off of the same block) is announced in one or another of the following cases: Lemon v. Chanslor, 68 Mo. l. c. 358; Canaday v. Railroad, 134 Mo. App. l. c. 287; O'Gara v. Transit Co., 204 Mo. l. c. 732, and cases cited; Orcutt v. Century Building Co., 201 Mo. l. c. 443-4-5; Mathew v. Railroad, 115 Mo. App. l. c. 473; Gilroy v. Transit Co., 117 Mo. App. l. c. 666-8; Redmon v. Railroad, 185 Mo. 1; Vancleve v. Railroad, 107 Mo. App. 1 .c. 100; Magrane v. Ry. Co., 183 Mo. l. c. 128.

The right doctrine is that the carrier of passengers for hire is not an *insurer* of their safety; yet while not an insurer his contractual and legal duty is to carry safely. The law imposes that duty upon those who use powerful agencies like steam and electricity, with their attending dangers, in the transportation of those who intrust their persons to them for carriage. Therefore, when a passenger sues in tort for a breach of that duty, the standard to measure the carrier's care is not a pinched one. It is set high—the gauge of duty arises precisely with the hazard, agreeably to the precept; The greater the hazard, the greater the care.

There is a question whether general or specific negligence is charged in the petition. We need not pass on that at this point. If, however, the charge be held to be one of general (as distinguished from specific) negligence, then, given the relation of passenger and carrier, a collision and an injury, the maxim *Res ipsa loquitur* applies, negligence is presumed prima facie, and the burden is shifted over from plaintiff's shoulders to defendant's to show a want of negligence —i. e., to satisfactorily show the collision was without

fault of the carrier. [Orcutt v. Building Co., 201 Mo. l. c. 441; Redmon v. Railroad, 185 Mo. 1.] There is no call to invoke that presumption to sustain the ruling on the demurrer. It stands solidly on the facts and the law applicable to them independent of the presumption.

The point of error in ruling the demurrers is disallowed to defendant.

II. *Is the verdict excessive?*

As this question also searches the testimony, we may as well state pertinent facts while we are about it.

Before her injury plaintiff weighed, say, one hundred and forty pounds. She is pictured as a "healthy robust girl," with "rosy cheeks"—"a great big, strong, fine looking girl" of "splendid color," of steady nerves and good spirits, earning her own honorable livelihood and twenty-six years of age. The testimony put in by her tends to show that, beginning with her injury, those conditions changed. She lost weight to a marked degree, became nervous and depressed, her countenance became grave, she lost the color of health. From being able to labor, as she had been, she could labor no more. Womb trouble at once developed with attending distresses peculiar to them— all this with a dreadful affliction to be presently noted from which she had been hitherto free. Going back a little to the accident, it was shown without any contradiction worth while that she received bruises on her head and hip which, as to outside appearances, were temporary. Not so with her inward hurts. At once on the collision a physician was sent for before she was taken from the car, the conductor going for him. Some of the witnesses describe her as being in a faint, others as being unconscious for a spell, while others did not observe such phenomena. She testified she knew everything going on but could not speak. All agree she was

carried into a near-by house attended by women and a physician and there put to bed. In the small hours of that night she was taken to her uncle's house, where she was staying. The family physician was out of the city, and another was called who attended her. After a week she was able to be up and around partly, but went to bed for a part of nearly every day from thenceforward to the time of the trial. About a fortnight thereafter the family physician returned and took charge of her. He then discovered, beside womb troubles, the faint pulsation of an aneurism in her chest. From thence on she was never entirely out of a physician's care. An aneurism is a soft, hollow, pulsating tumor in an artery caused by the dilation or rupture of one or more of the three several coats making up the texture of that blood conduit. It may come, we take it, under the proof, from inherited tendencies, or from syphilis, rheumatism or certain other diseased conditions. But an aneurism, under the proof here, may be traced to a shock, a strain or an injury as its origin and is likely to arise in that way. Such a one is called a "traumatic aneurism" in the learned terminology of medicine—a terminology (if we may use words taking on color and size from the subject-matter) delighting in *sesquipedalia,* now and then having a vertiginous effect on the lay mind. I stand sponsor for neither "sesquipedalia" or "vertiginous." They were taught me by two of my learned Brothers. But enough of that. The testimony on the point all tends to show that Rose Stauffer was suffering from a tumor of that sort. No facts heading to any other origin except the shock of the collision were shown. Now, an aneurism is incurable. It progresses steadily, and always to the bad. It forbids strong exertion or intense excitement under pain of instant death as a penalty. This one was in the upper arch of the aorta, and forbade childbirth (hence marriage) and its victim was doom to face her known and melancholy fate uncheered

by one ray of hope from human aid. This is strong language, but it is justified as within the testimony. The trial was well on towards three years after the injury and the growth of the trouble had been so pronounced that the pulsations of that arterial tumor could be heard outside her dress by the unaided ear. We may not know whether it did cause her death in point of fact, but if so it was a natural result. If it did not, then her suggested death, inevitable from it if left to run its course according to its will and laws, was but hurried up by some independent intervening cause. In the face of such a fearful calamity resulting to her by the collision, it seems to me it would be a court both uncommonly bold and uncommonly cold that would meddle with the size of her verdict on the ground of excessiveness or prejudice and passion. Certain it is no principle of law or precedent occurs to me springing courage or inciting duty to do so.

This point is also disallowed to defendant.

III. *Of the evidence of Hill, an expert.*

When Valentine, the motorman running the car, was on the stand for defendant, he testified on cross-examination without objection that his car could have been stopped in from 100 to 150 feet. Plaintiff's witness, Hill, qualified as an expert, and was permitted to testify that the car could have been stopped in from thirty to forty feet, and that a "blow out" came from feeding the current too fast. Hill's testimony was admitted over an objection that it was "incompetent, irrevelant and immaterial." It is not quite clear whether plaintiff's object in Hill's evidence was to contradict Valentine's, or to prove the ultimate fact that the car could have been stopped in thirty or forty feet. An ingenious attack is made in defendant's brief on Hill's testimony to the effect that it was directed to an issue, the "last clear chance," when such issue was not in the case, and an ingenious parry of that attack is

made in plaintiff's brief. But we will not develop or determine the matter from that standpoint. The fact is that plaintiff withdrew Hill's testimony by an instruction to the jury. On that situation we observe: Cases may be found where, under stress of extreme provocation and when the waters of justice have been incurably muddied by improper testimony, courts have held it error to admit the testimony, although it was afterwards withdrawn. To illustrate that theory: a metaphor has been used whereby such testimony has been likened to the administration of poison to a victim of such sort that an antidote could not provide a remedy, and another whereby it has been likened to scarring a victim with a red-hot branding iron that would leave the burning brand behind in the flesh when the branding iron was taken away. But this case does not fall within any such inflamed similes. It is not clear to us why the testimony was not admissible, and certainly its withdrawal by an instruction of the court is the only known way of healing the error (if any) of its admission. That rule is a good working one to attain a right result, and is always held to attain such result except under exceptional circumstances, not present here, calling for a reversal as the only cure.

The point is also disallowed to defendant.

IV. *Of refusing to permit a cross- examination of plaintiff on a certain matter.*

At a certain time defendant had plaintiff summoned before a notary and took her deposition. Reciting the incidents of the accident, she was asked by Mr. Hardin for defendant the name of her escort on that evening. At this point Mr. Murphy, her counsel, instructed her not to answer, and she refused to give the name under such advice. No attempt was made to follow up the incident to coerce an answer by citation and commitment. But it ended at that point. At the

trial the whole of her deposition was introduced by defendant as part of her cross-examination. Before her deposition was so introduced, the following occured:

"Q. Do you remember what you said over there that day? A. Yes, sir.

"Q. Well, you remember you refused to tell who, it was that was with you, didn't you?"

"By Mr. Hardin: I object to that as incompetent.

"By the Court: The objection is sustained.

"And to the ruling and action of the court, defendant then and there duly excepted."

Reversible error is now assigned on the foregoing ruling. It is argued that defendant was entitled to the name of her escort when her deposition was being taken, and that the refusal of the court to permit her cross-examination on the matter of her refusal to give his name is reversible error. But we shall not follow the lead of that suggestion. It will be observed in the first place that Miss Stauffer was asked if she remembered refusing to tell who was with her. That was the question ruled out. She was not asked to tell *why* she refused to answer and there was. no use in inquiring if she remembered her refusal, because her deposition shows (and defendant had the benefit of that part) that she did refuse and she had just testified she remembered what she said at the taking of that deposition. In the second place, if the object was to go on and ask why she refused, then the deposition explains itself on that score; it was done by advice of counsel. In the third place, no possible injury happened to defendant by the ruling. Her escort's name was Murphy, the record shows he was in attendance at the trial up to the time he was wanted by plaintiff when he disappeared. There is nothing to show that his name was not known to defendant. The presumption is the other way, for there is testimony that the names of at least

some of the witnesses were taken by the conductor or motorman at the time of the accident. There is also testimony showing that some of defendant's witnesses knew the name of her escort.

For the foregoing reasons there is no substance in the point and it is disallowed to defendant.

V. *Of alleged improper remarks by plaintiff's counsel in closing to the jury.*

(a)   In his argument Mr. Hardin for plaintiff said:

"They were getting the names of witnesses instead of looking after the dying woman in the car; these employees of the defendant, were taking names at that time for the purpose of putting into operation the machinery of this railroad company to defend this law suit."

On that head the record shows as follows (By Mr. Hardin, counsel for defendant):

"I object to that; I deny that that is the evidence, and I object to the remark as unwarranted, and prejudicial to the interests of this defendant."

The Court said: "Keep within the record, Mr. Harding; go ahead."

The motion for new trial pretermits all reference to that incident. That omission closes the door to an appellate court. [Eppstein v. Railroad, 197 Mo. l. c. 739.]

(b)   During the same argument Mr. Harding also said:

"Mr. Hardin asked why Mr. Murphy, who was with Miss Stauffer the night she was injured, wasn't brought in to testify. He also criticised Miss Stauffer because on the advice of her lawyer she refused to give his name to the defendant when her deposition was taken. Perhaps she was wise in refusing to give his name; he has been here in attendance on this court at every term until this and now he cannot be found. That

is the reason we don't give the defendant the names of our witnesses, because if we did they might not be here.''

There was no objection to that part of his argument, no ruling and no exception. In the presence of this silence, *nisi*, the statute has play forbidding exceptions here not decided below. [R. S. 1909, sec. 2081.] If there had been objection, a ruling and exception saved or if counsel had not been rebuked by the court when called on to do so, there would be matter challenging sharp attention, especially so in the wasp's sting in the tail of the statement. The ugly insinuation coiled up there is grievous and poisonous. It might be as well said now as at any other time that in a close case where the trial court refused to act with vigor on timely objection to veiled and damaging insinuations of that ilk, we would not allow a verdict to stand if earned by such means where there are no facts justifying the means. If the verdict were excessive, such inflammatory matter might, even as it is, allow a correction. [Bragg v. Railroad, 192 Mo. l. c. 365-6.]

(c) Mr. Harding, on defendant's objection, was twice checked by the court in an argument relating to medical witnesses; but as the court then characterized his remarks in the presence of the jury as not proper and pointedly told the jury to disregard them, we shall not reproduce them. There was no error at that point.

The premises considered, all the assignments of error under this sub-head are disallowed.

This brings us to the main proposition relied on for reversal, viz:

VI. *Alleged error in refusing and giving instructions.*

(a) Before considering the instructions there is a question applicable to the body of them to be disposed of *in limine.* It may be stated this way: Plaintiff contends that under the pleadings the maxim, The

thing speaks for itself, applies. *Contra,* defendant stoutly asserts that is not so. We are of opinion the maxim *res ipsa* does apply. The controversy hinges on whether the charge of negligence is general or specific as those terms are understood in the law. If the charge is general the maxim applies and when it applies it is trite learning that the burden shifts to defendant carrier to show that a collision resulting in injury to a passenger was not the product of the carrier's negligence. If it does not apply, because the charge is specific, then plaintiff must prove the specific charge of negligence, because having made the specified charge he is presumed to know what specific acts caused the accident, whereas under a general charge no such presumption arises, and knowledge is presumably with the carrier, not with the passenger. As heretofore pointed out the charge in the petition in substance is that the car was negligently run into a steam roller and was negligently caused to collide with said roller with force and violence. By metaphysics we may split things up, but trouble comes thereby. Some one had defined a metaphysician as a man who splits a log and when he has split it behold he has *two* logs instead of *one* to reckon with. Too free use of metaphysics is bad in legal exposition. Eschewing it, we think the charge here is a general charge of negligence. To be sure there is precision and specification as to what *resulted* from the negligence, to-wit, a collision with a steam roller, but there is no specification of the negligence itself. It stands nakedly as general. This holding accords with the trend of the cases. Price v. Railroad, was in Banc. There was a question there whether the charge was of general or specific negligence. It was in substance precisely as the charge in this case (220 Mo. l. c. 443), and was held to be general (p. 454). It was held further (and the proposition now to be announced is applicable in this case) that plaintiff, by going on at the trial and proving specific acts

of negligence, did not lose the right to have applied the maxim *Res ipsa loquitur* and the presumption of law arising from that maxim, to-wit, that negligence was presumed on proof of the relation of carrier and passenger, of the collision and of an injury (p. 456). In the MacDonald case (219 Mo. 1. c. 474-5) will be found a charge of negligence. It was held general, although it is more definite than the charge in the petition at bar (p. 487).

As we held in those cases so we hold in this, viz: The contention is ruled against defendant.

We reach now plaintiff's given instructions:

(b)  Plaintiff got three over objections, reading:

"1.  The court instructs the jury that if you believe from the evidence that plaintiff was a passenger upon the car mentioned in the evidence, at the time she claims to have been injured, and that defendant by its agents, servants and employees in charge of said car upon which plaintiff was a passenger (if you find she was a passenger) so negligently, carelessly and unskillfully managed, operated and ran said car at a point on the Southwest boulevard near the intersection of Lincoln street and said Southwest boulevard in Rosedale, Kansas, as to cause said car to be brought into violent contact with the steam roller mentioned in the evidence which was at said time upon said track at said point (if you find such to be the fact), and that plaintiff was injured thereby, and that the agents, servants and employees of defendant in charge of said car upon which plaintiff was riding, saw, or by the exercise of the care required of them as set out in instruction No. 2, could have seen said steam roller upon said track in time to have stopped said car and have avoided the injury to plaintiff; but negligently and carelessly failed to stop said car and prevent said injury (if you find plaintiff was injured), then your verdict must be for the plaintiff.

"2. The jury are instructed that if you believe and find from the evidence that defendant at the time of the occurrence in question, received and accepted plaintiff as a passenger upon a car which it was then operating, then the degree of care which defendant and its employees were bound to exercise towards plaintiff while she was being so carried upon said car was this: Defendant was bound to run and operate its car with the highest practicable degree of care of a very prudent person engaged in like businesses; in view of all the facts and circumstances as shown in the evidence at the time of the alleged injury of plaintiff, and defendant is liable in this case if its agents, servants and employees in charge of said car were guilty of even slight negligence in the management and operation thereof, if the jury further find and believe from the evidence that the injury to plaintiff was the result of such negligence.

"3. The jury are instructed that the plaintiff claims in her petition that on the 18th day of November, 1904, she was a passenger on the car of the defendant mentioned in evidence; and that while she was a passenger on such car, it came in collision with the steam roller mentioned in the evidence. Now, if you find for the plaintiff, and if you believe from the evidence that she sustained injuries as the direct result of said collision, then you may allow her such damages for such injuries, if any, as you may believe from the evidence she has sustained, as a direct result of said collision. In estimating such damages you may take into consideration the physical pain and suffering, which you may believe from the evidence she has endured, if any, or is reasonably certain to endure in the future, if any, as a direct result of said injuries, if any.

"You may also take into consideration the effect, if any, of said injuries, if any, upon plaintiff's health.

"You may also take into consideration any reasonable sums of money, if any, which you may believe

from the evidence, plaintiff has become liable for for necessary medical treatment received by her on account of said injuries, if any, not to exceed the sum of $275, but the whole amount of your verdict should not exceed $20,000."

(1)  Instruction number one is assailed as outside of or as enlarging the issues.  It is argued the "last chance" doctrine is envoked thereby, when such doctrine is not applicable to a case of this character. Moreover, that the petition counts on negligence in *running* not in *stopping* the car as the instruction does.

The proposition that the last chance or humanity rule is invoked by the instruction and is not counted on in the petition is elusive and nice.  It seems to procede on the notion that the doctrine does not apply in suits by a passenger against the carrier, therefore a false light was held out to the jury misleading them to the injury of defendant.  But that argument seems to us fallacious.  Have we a call to decide the abstract question whether the humanity rule is broad enough to include the relation of passenger and carrier?  We think not.  The best plan in procedure in court, as in traveling generally, is not to cross a river until one gets to it.  That the instruction carries phraseology familiar in pronouncements of the humanity doctrine, does not of itself hurt the instruction.  If taken by and large and read by its four corners, it announces a legal proposition applicable to the actual facts of the case, it is well enough.

Recurring to the petition, it charges that defendant's servants  carelessly, negligently and unskilfully ran the car into a large steam roller.  It does not stop at that point, but goes on the charge that the car was negligently *caused* by defendant's servants to collide with said steam roller with great force and violence. The ultimate and obvious meaning of those two charges is that there was negligence in causing the car to col-

lide with the roller. What does caused to collide mean in that connection? In common sense if A is accused of causing a collision negligently, does that not mean he caused it by running or not stopping, either or both? Does not stopping refer to the running and *vice versa?* We think so. At bottom the collision was the thing complained of and the running without stopping produced that thing. When I say a car was running without stopping, is not "without stopping" a modifier of "running" and does it not tell the *kind* of running? The testimony on both sides on the paper issues shows how the car was run and why the collision took place and the instruction, dealing with the facts, tells the jury if it was run so negligently as to cause it to strike the roller when the stroke could have been prevented by proper care in stopping the car then the finding should be for plaintiff if she was hurt thereby. Because the selfsame words were not used in petition and instruction, that does not vitiate the latter so long as the sense is the same. Looked at from any view point it is hard to see the difference between running a car so negligently as to cause it to collide with a roller, on the one hand, and in running it so negligently that it was not stopped in time to prevent a collision when the collision could have been avoided by the exercise of due care, on the other; and it is still harder to see how the merits are affected materially.

The cases relied on by defendant are not this case. If the charge was running too fast, and the proof was directed to a mere negligent stop, we would have another case to deal with.

The point is disallowed to defendant.

(2) Plaintiff's instruction number two is criticized as too general; it is said that it should have been specific like the petition, and not cover, as it did, the whole field of negligence. But we have held the charge in the petition general, and that holding covers the point made. In a preceding paragraph, in ruling on

the demurrers, the high degree of care due by a carrier to a passenger is discussed. The instruction is in line with the conclusion there reached. But if we were to concede any force to defendant's criticism we confront the fact that over against plaintiff's general definition of a carrier's care defendant got specific definitions applying to the facts of the case on trial. Some of those instructions cast on plaintiff the burden of proving negligence of a precise kind, thereby ignoring the proposition that under the *Res ipsa loquitur* doctrine the boot was on the other foot and negligence was presumed. We reproduce some of them:

"2. The court instructs the jury that the burden of proof is on the plaintiff to prove to your satisfaction by the preponderance or greater weight of the credible testimony that defendant company was guilty of negligence as submitted to you in these instructions, and this burden of proof continues and abides with plaintiff throughout the entire trial; and unless you believe and find from the evidence in the case that the plaintiff has proved by a preponderance of the credible testimony to your reasonable satisfaction that the defendant was guilty of negligence as defined in these instructions, and that such negligence was the direct and proximate cause of the injuries complained of, then your verdict must be for the defendant.

"4. You are further instructed that the only negligence that is submitted to you for your consideration in this case is that the agents, servants and employees of defendant in charge of the car carelessly and negligently and unskilfully ran said car into a large steam roller, which was on the track of defendant along which said car was running, with great force and violence, thereby throwing plaintiff from her seat upon the floor of said car and injuring her. Now the court instructs you that in this case you are limited in your consideration to the negligence as above specified in this instruction; and no other acts or conduct of the

defendant, its agents, servants or employees, either of commission or omission, must be considered by you. If the plaintiff did receive an injury by a collision between said car and roller, as a result of any cause or causes other than the negligence above specified in this instruction, then she cannot recover in this case, and you must render the verdict for defendant company.

"5. You are further instructed that in this case, the mere fact, if true, that plaintiff was injured in a collision between the car on which she was riding and a steam roller on the railway track, gives her no right to sue defendant and recover damages in this case. Before, under any circumstances, plaintiff is entitled to a verdict, you must believe and find from the greater weight of all the credible evidence in this case that her injury, if she was injured, was actually caused by the negligence of defendant's servants in charge of the car in the manner submitted to your consideration in instruction numbered 4 given for defendant. If her injuries were not actually caused by such specified negligence, then she has no case here and cannot recover, even though she did receive an injury in said collision between said car and roller, and your verdict must be for defendant company.

"8. You are further instructed that the fact that the roller was going toward the track on which the car was running, and came near to the track, if you believe that to be a fact, was not enough in itself to impose any duty on the motorman to stop or check the speed of the car; there must have been something noticeable in the conduct of the man controlling the movements of the roller, to apprise the motorman on the car that the man in charge of the roller contemplated moving it into a place of danger of colliding with the car, before it became incumbent on the motorman to stop the car or check its speed; the motorman was not required to assume that the man controlling the roller would act carelessly or negligently in going upon the track

in front of him. His duty to stop the car, or to check its speed, began when, and only when, he saw that the man in charge of the roller was proceeding to a prob able collision, unobserving and unaware of the approach of the car; and if the motorman, when he saw, or might have seen, the conduct of the man in charge of the roller, attempted to stop his car and avoid a collision with the roller, and was unable to do so, having the necessary regard for the passengers, then I instruct you that the plaintiff is not entitled to recover in this suit, and you must render a verdict for the defendant company.

"9. If the defendant's servants in charge of the car in controversy exercised all the care that was reasonably practicable in the management and control of the car, then there was no negligence on their part and the verdict must be for the defendant company, even though you may believe from the evidence that plaintiff was injured without any fault on her part."

Reading the whole body of the given instructions together, as we are bound to do, defendant fared uncommonly well, and the points made against instruction 2 are disallowed.

(3) It is further argued that instruction 3 is vicious because in stating the elements of plaintiff's case it left out the necessity of her proving negligence. As to that contention we observe:

This instruction palpably was on the measure of damages. It was not a general instruction covering the whole case and directing a verdict. Others did that. We are not to apply the rule, then, which requires all the issues to be stated in a general instruction, undertaking to do that and directing a verdict in the event of a favorable finding for plaintiff on all such issues.

Furthermore, it would have been a perfect instruction, in the view we take of it, if it had begun with the phrase, "Now, if you find for plaintiff." All preceding that is surplusage, in the nature of an identifying

earmark or caption. It should have been left off, but, being on, it could do no possible harm to defendant. Because:

On any view, under the facts of this record, plaintiff on the cold law was entitled to recover without proving negligence. It was defendants duty to show due care, not hers to prove negligence. So that in an instruction for plaintiff that does not direct a verdict it was not error to omit defendant's defense. And this is true, although in other instructions plaintiff had handicapped herself, and by still others defendant had handicapped her, by the burden of proving negligence, when negligence was presumed from proof, as here, of the relation of passenger and carrier, a collision and a resulting injury.

It is also argued that the instruction, instead of requiring the jury to find she was a passenger and that there was a collision, assumed those things as true. What if it did? There is no error in that. Facts not controverted but shown to exist and constituting the very basis of the theory of both litigants at the trial, as here, may be assumed in an instruction. (*Vide*, Davidson v. Transit Co., 211 Mo. l. c. 356 *et seq.*, where the authorities are collated and canvassed.)

Plaintiff had a meritorious case and we should not reverse her judgment unless defendant puts its finger on error materially affecting the merits or affecting its substantial right. [R. S. 1909, sec. 1850; *Ibid.*, sec. 2082.] We cannot say such error exists in the giving of instruction 3 for plaintiff. Accordingly we so rule.

(c) With the foregoing disposition of errors assigned in the giving of plaintiff's instructions, we reach those assigned in the refusing of defendant's. Two were refused of which complaint is made. One, marked "C," reads:

"Gentlemen of the jury, the court admonishes you that all unusual incidents arising during the progress of the trial of this case outside of the evidence, must

be disregarded by you; if any person, whether connected, or not, with this case or its trial, has spoken to you, or to any other person in your hearing, in any manner whatever, referring to this case, or to any party connected with this case or its trial, except during the trial in open court, it is your duty to wholly disregard such remarks, if any, of any such person, and entirely withdraw yourselves from any influence, if any, of any and all such persons and remarks, if any. You owe a duty to yourselves, to this court, to the parties litigant and to the cause of justice, to decide this case only upon the evidence that the court has permitted to be given before you, and the law which the court has given to you by way of these instructions, to be by you applied to the evidence, as a guide to you in making up your verdict, and to render a fair, unbiased and impartial verdict, in this cause, only upon said evidence and under these instructions; and you have no right to allow any bias, prejudice or sympathy, if you have any such, for or against either of the parties, to influence you in the slightest degree, when you come to deliberate upon the evidence and the law as given you in this case, and to the rendition of your verdict in this cause.''

Another, numbered 7, reads:

''You are further instructed that even though you may believe and find from the evidence in this case that the motorman in charge of the car in question saw the steam roller traveling along the street, either on or approaching the street railway track, yet under the law said motorman had the right to assume that the operator of said roller would stop the same before going upon the track and wait for said car to pass, and not undertake to cross the track in front of said car in such manner as to expose said roller and himself to a collision with said car; or if he went upon the track with said roller that he would get across and out of danger of a collision with said car before it would

reach him; and I further instruct you that said motorman was not required to stop said car, nor was he required to check or slacken the speed of said car, until there was apparent danger of a collision.''

Neither of them were proper. As to ''C'' it is apparent that it falls far short of explaining to the jury their whole moral duty. If some of it, why not *all?* If it be proper in a law suit to give such a homily on moral or ethical duty to the jury (for which, by the by, learned counsel cite no precedent) should not the court cover the whole ground while about it? An attempt is made, in part, to justify the instruction because of one incident of the trial. While plaintiff was on the stand she was overcome by weeping and hysteria. Here was a young woman mortally hurt and in telling her story she broke down weeping and left the stand at the suggestion of the trial judge. Let the one who could have calmly told her story (and such a story) without emotion, cast the first stone at her. I have neither heart for the office or call to fill it, as I see it. The trial was adjourned to the next day and when resumed in the morning the court gave defendant an option to continue the case over the term. Defendant declined the option and chose to go ahead. That declination closed the incident once for all. The trial court had no more right to single out that incident to the exclusion of all others and comment on it, than it had to single out any one bit of testimony for comment. The instruction was well refused.

As to instruction number 7, whatever might have been the law if a *person* had been on the track ahead of the car or about to enter on it and had been injured by a collision, it is manifest that the instruction did not declare good doctrine as between the carrier and the passenger when a fifteen-ton roller is on the track ahead and is seen for two hundred feet away creeping at a snail's pace across. Under such circumstances the motorman owed the duty to his passenger to exercise

a high degree of care which precluded any presumption or assumption that the inanimate machine would stay off or get off. He should have brought his car under control and have stopped without taking a chance of a collision. The instruction was not the law of the case.

The earnestness of distinguished counsel representing defendant in contending for reversible error has caused a review of all the assignments at length. Our conclusion on the whole matter is that the case was well tried, well decided and that the judgment should be affirmed. It is so ordered. All concur.