# TRIGG v. OZARK LAND & LUMBER COMPANY, Appellant.

### Division One, March 15, 1905.

1. **NEGLIGENCE:** Master and Servant: Defective Machinery: Cause of Accident. The servant does not make out a case of negligence against his master for personal injuries by showing that the machinery was worn and defective and that he was injured. He must also show that those conditions caused his injuries. The burden is on him not only to show defects in the machinery, but also to show that his injury came from these defects.

2. ———: ———: ———: **Various Causes: Conjecture.** Where the testimony is that various causes might have caused the accident, and the utmost that can be said of it is that the defective machinery alleged to be the cause might have caused it, the whole matter is left to conjecture, and a demurrer to plaintiff's case should be sustained.

3. ———: ———: **Possible Cause.** The master is not liable for an accident which he could not reasonably have foreseen and guarded against, although caused by a defect in the machinery. Where a sawmill had been in operation for ten months prior to the accident, cutting about 100,000 feet of lumber daily, and was continued for two months thereafter without repair, and during that entire time no other accident like the one made the basis of the suit occurred—which was that a part of a plank being sawed, was deflected from its course by defective rollers, and was suddenly thrown out by the saws as a missile, the accident was one which was not reasonably to be expected, and therefore the master was not liable.

4. ———: ———: **Inexperienced Servant: Not Pleaded.** Plaintiff can not allege one act of negligence in his petition and recover on proof of another totally different act. Where the negligence charged is that the machinery "was worn, out of repair and unsafe to be handled or used," plaintiff can not recover on the theory that he was a green hand and that it was negligence to put him to do work which required skill and experience.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED.

*Botsford, Deatherage & Young, W. J. Orr* and *James Orchard* for appellant.

(1)   Since there is no evidence showing or tending to show that the conditions of the boxings or of the rolls caused, or contributed to cause, the accident, and since the evidence of John Weaver and plaintiff show how the accident was caused, the verdict and judgment should be reversed.   Even if it were uncertain whether the accident was caused as alleged by plaintiff or by other causes for which defendant is not responsible, still plaintiff ought not to recover.   Smart v. Kansas City, 91 Mo. App. 592.   (2)   The evidence of plaintiff shows that he had been working on the edger in question for months prior to the accident in question. He testified that the boxings got hot and were worn and that the feed rolls were worn.   These conditions of the boxings and feed rolls, of which he makes complaint, were, as shown by his own testimony, well known to him long before the accident, and he does not pretend that he ever made any complaint to defendant or that defendant ever actually knew of these conditions. Nothing could be clearer than that plaintiff assumed the risk resulting from the conditions of the boxings and feed rolls of which he now complains.   Those conditions were patent, not latent.   Watson v. Coal Co., 52 Mo. App. 370; Marshall v. Hay Press Co., 69 Mo. App. 260; Kleine v. Clothing Co., 91 Mo. App. 102; Cothron v. Packing Co., 98 Mo. App. 343; Beckman v. Brew. Assn., 98 Mo. App. 555; Bohn v. Railroad, 106 Mo. 429; Winkler v. Box Co., 137 Mo. 394; Stagg v. Tea & Spice Co., 169 Mo. 499; Howard v. Railroad, 173 Mo. 529; Wright v. Railroad, 25 N. Y. 566; Buzzell v. Lacoma M. Co., 43 Me. 113; Thayer v. Railroad, 22 Ind. 26; Hayden v. S. M. Co., 29 Conn. 548; Railroad v. Barber, 5 Ohio St. 541.   (3)   The mere fact of injury to the plaintiff does not prove or tend to prove defendant's negligence or that plaintiff's injury was not due to

some other cause.   Breen v. Cooperage Co., 50 Mo.
App. 202; Bohn v. Railroad, 106 Mo. 429; Thompson v.
Railroad, 140 Mo. 125; Carvin v. City, 151 Mo. 334.

*A. H. Livingston* and *Sherwood, Young & Lyon*
for respondent.

(1) There was ample evidence to support the alle-
gations of the petition and to sustain the verdict.   (2)
That there is a mere conflict in the evidence does not
affect the stability of the verdict, that being a matter,
so far as the finding  on that evidence is concerned,
which lies strictly within the exclusive province of the
jury.   James v. Mut. Reserve, 148 Mo. 15.   Nor does
the fact that the appellate court would not have reached
the same result as did the jury, cut any figure in the
case.   Davis v. Railroad, 46 Mo. App. 180.   And such
court, in determining whether the evidence is sufficient
to support a verdict for the plaintiff, will, laying aside
defendant's controverting evidence, assume that plain-
tiff's evidence is true, and will give to it every favor-
able inference which may be reasonably and fairly
drawn from it.   Cohn v. Kansas City, 108 Mo. 387.
(3)   But the evidence of defendant, by its own witness,
Holt, having established that the ''edger'' was a dan-
gerous machine, not to be operated by an unskilled
man, and the evidence having also shown that plaintiff
was a raw, green and inexperienced hand, and that de-
fendant did not warn him of that danger, nor instruct
him how to avoid it—this alone constituted negligence.
Dowling v. Allen, 74 Mo. 13, 102 Mo. 220; Zellers v.
Water & Light Co., 92 Mo. App. 117; Reisert v. Wil-
liams, 51 Mo. App. 16.   And the jury having returned
a verdict in favor of plaintiff, if necessary, this court
would, acting under the ninth clause of section 672, Re-
vised Statutes 1899, supply the omitted allegation as
to that negligence, and thus affirm the judgment.   Seck-
inger v. Mfg. Co., 129 Mo. 590; Sawyer v. Railroad,

156 Mo. 468. And the same witness having stated that he and some other mills always pleated a piece "right over the saw," which kept lumber being sawed from being thrown back, it was negligence in defendant to fail to supply such a piece, as it would have rendered the operation of the edger absolutely safe. Pauck v. Beef Co., 159 Mo. 476; Doyle v. Trust Co., 140 Mo. 19.

*Botsford, Deatherage & Young, W. J. Orr* and *James Orchard* for appellant in reply.

It is quite evident, from the reading of respondent's brief, that counsel who prepared it would never have sought a recovery in this case on the allegations of the petition that the machine complained of was "worn, out of repair and unsafe," but on the other hand would have alleged and tried to prove that the plaintiff was "raw, green and inexperienced," and was put to work at this machine without warning or instruction as to the dangers incident to the operation thereof. That plaintiff must stand or fall on the allegations of his petition and the theory on which his case was tried below, is well settled. McManamee v. Railroad, 135 Mo. 447; Gurley v. Railroad, 93 Mo. 450; Prior v. Railroad, 85 Mo. App. 367; Oglesby v. Railroad, 150 Mo. 176; Seckinger v. Mfg. Co., 129 Mo. 602; Holman v. Lange, 143 Mo. 108; McClanahan v. West, 100 Mo. 322; State to use v. O'Neill, 151 Mo. 81; Mirrielees v. Railroad, 163 Mo. 486.

VALLIANT, J.—Plaintiff recovered a judgment for $5,000 damages for personal injuries alleged to have been received while he was in the service of the defendant, through defendant's negligence. Defendant appeals.

Defendant operates a sawmill in which the plaintiff was employed. The plaintiff's usual work was to oil the machinery, but in the temporary absence of the

regular operator he was frequently called to operate a machine that was called an edger, and was so engaged when the accident of which he complains occurred. The negligence charged in the petition is that the edger ''was worn, out of repair and unsafe to be handled or used'' and that defendant knew it, or if it had exercised reasonable care would have known it.

The evidence for the plaintiff tended to show as follows:

The edger is a machine used to rip off the edges of lumber or rip the boards into desired widths. There were several saws in the machine, fixed on a shaft nine or ten feet long. These saws were movable and were adjusted by the operator to rip boards to any desired width. The plaintiff's immediate task was to rip boards that were twelve inches wide in two, making boards six inches wide, and the saws were set accordingly. There were rollers to carry the lumber to the saws, and rollers beyond to carry it after it had passed through the saws to the place of deposit, and there were rollers, called dead rollers, to bear down on the lumber and hold it firm against the saws, these last-named rollers weighed 100 or 115 pounds. They could be raised or lowered by the operator by means of a lever at his hand so as to adjust them to lumber of any thickness. He testified that he had been ripping some two-inch pieces and the rollers were set for that, but, as he was to change to one-inch stuff, he let the rollers down to bear at one inch. After one or two pieces had passed through the saws and he was passing another piece through, one part of it, the half to the right, was thrown back by the machine and struck him on the hip, inflicting the injury complained of; the other part passed on through.

Plaintiff also testified that the boxing in which the shaft turned was so worn that it required constant oiling to keep it from getting hot; that it was so worn that he could insert his finger in it, and frequently did so to

get out trash; "it was worn down until it seemed as though the saw shaft dropped down and bent in some way." It had been in this condition for several months to the plaintiff's knowledge. The feed rollers were fluted and they had worn smooth in places. The plaintiff had been at work in and around the mill about ten months, had been oiling this machine about two months. In undertaking to tell how it occurred he said he "supposed the piece got hung on the saws."

Pfenninghausen, a sawmill man, testified as an expert for plaintiff. He said that if the boxing was so worn that the shaft had any end play "to amount to anything" it would cause the saw to lead, and if it had any side play it would cause the shaft to leave the proper position in line with the rolls and cause the saws to lead, that is, they would not run in a line with the rolls, but cut the lumber wedge shape having the effect of pinching the lumber fed into the machine, throwing it off, forcing it out back, and the machine would not give satisfaction.

"Q. It is running through, say, a board sixteen feet long, twelve inches wide, and one inch thick, splitting it into six-inch pieces of No. 1 first-class lumber, you have different classes of lumber, and if that board were to fly back and was fed again through this roll and go through, what would be the cause of that, in your judgment? A. There are various causes; of course, the probable cause is by the saws not running in line with the rolls.

"To this question and answer defendant objects, because plaintiff himself states that the lumber did clear the saw. No ruling by the court.

"Q. Suppose it had gone far enough to split the piece in two, would it be between the saws then or not? A. The saw would have the same action on the piece.

"Q. Until it had come clear back this way? A. Yes, sir, until it would go clear out of the saws; if the saws were to lead as the board went in here and

make a wedge in leading, of course, as they lead it makes a board a trifle wider than as it first enters, and if the board was not clear out of course it gets wider between the saws and the friction of the saws would throw the board back, if not clear out here; of course, if it is clear out here, it is clear out of reach of the saws.

"Q. You spoke of the rolls having teeth on them, what is the object of the teeth being on the rolls? A. The object of the teeth is to secure a steady feed and if the teeth were to become worn on the bottom rolls, of course if they are not sharpened or some other roll put in, it would not insure a safe feed; of course upon a safe feed depends a good deal, although these rolls here press the board down on the lower rolls here, but at the same time, if the teeth are dull, and if, as I say, the saws lead, the saws can push this board back through here by reason of being smooth rolls; if the teeth are sharp, of course they claw into the board and would, if anything, attempt to push the board through, even if wedged in the saws, and it usually occurs, if a board passed behind here to push the board through; of course if these rolls are smooth, they keep on running but the board remains there; of course here it has two feeds, but out here it only has one feed and if it gets wedged it throws it back there."

Plaintiff's testimony also tended to show that the machine had been in operation for ten months or more before and was operated for two months or more after the accident without repairs being made; that it was stopped only a few minutes after the accident when another man took the place the plaintiff had occupied operating the edger and went on with the work; that during all this time the mill sawed 100,000 to 150,000 feet of lumber in a day, at least half of which went through this edger. The plaintiff's testimony also tended to show that his injuries were serious.

At the close of the plaintiff's case the defendant asked an instruction in the nature of a demurrer to

the evidence which the court refused and defendant excepted.

The testimony on the part of the defendant was to the effect that that machinery was in good order; that its average output was 120,000 feet of lumber a day; that it was run steadily on after this accident the same as before for about two months, when the whole mill was shut down for its usual annual overhauling; that no other accident of this kind had ever occurred with the machine either before or since, and that it was impossible that a like accident could occur unless the rollers that held the boards down were lifted. Defendant's evidence also tended to show that the plaintiff's real injuries were of trivial character, and that those he complained of were fictitious.

The court ought to have given the instruction asked by the defendant in the nature of a demurrer to the evidence.

There was evidence tending to show that the boxings in which the shaft revolved were worn, and that the flutings on the rollers were worn, but there was no evidence tending to show that those conditions caused the accident. The burden was on the plaintiff to show not only defects in the machinery, but also to show that his injury came from those defects. Neither he nor any witness of his undertook to say that the worn condition of the boxings and rollers caused the accident; the utmost that could be made out of the testimony was that it might possibly have caused it. Plaintiff said he supposed the piece that hit him got hung on the saws. His expert witness, Pfenninghausen, when asked to give his opinion as to what caused the accident, said: "There are various causes; of course the most probable cause is by the saws not running in a line with the rolls." If there were various causes, he should have stated them and it then would have been for the jury to say which was the most probable. But his testimony, sifted to the grain, leaves nothing but conjecture. What

he called the probable cause is based on several hypotheses of which there is no evidence, or else the evidence is to the contrary. He said if the play of the shaft was sufficient ''to amount to anything'' the saw might lead, that is, rip the board wedge-wise, and if then it did not pass clear through the saws it might get caught and the force of the saw would throw it back. How much play the shaft would have to have ''to amount to anything'' he did not say and whether this board had passed clear through these saws he did not pretend to know. The plaintiff's own testimony, although not very clear on that point, indicates that the board did pass entirely clear of the saws. One-half the board that was being ripped certainly passed on ·out in the regular course, and as it was the twin of the other half that did the injury the evidence does not show how one-half could have cleared the saw and the other have stopped. The expert said: ''Of course if it is clear out here it is clear out of reach of the saws.'' To base a verdict on that opinion, therefore, the evidence ought to at least tend to prove the hypothesis on which it is founded, which it does not do. Again it will be observed the witness sometimes used the term ''thrown back'' and other times ''pushed back,'' and he seems to use them as expressing the same meaning. This board was thrown back, that is, it came swiftly as a missile, inflicting injury where it struck; it was not merely pushed back, which is an action indicative of no sudden result.

We must keep in mind that this dead roller, weighing 100 or 115 pounds, was let down on this board for the purpose of holding it firm against the saw, so firm that it would not yield when by the force of the feed roller it was carried against the saw. The action of these rollers was to carry the board from the operator. The theory of respondent is that the half of the board which hit the plaintiff was thrown back with such force that it passed, swift as a missile, under these heavy

holders, in spite of the force that was being exerted on it by both sets of rollers. We might perhaps be able to understand how the board could have been pushed back under that weight and against those forces, but that it could have been thrown back as this board was we do not understand. The force of the saw which threw the board back was no greater than that which it exerted in ripping it, and since the weight and force of the rollers was sufficient to overcome the cutting force of the saw, the natural inference would be that the same force could not throw it back, as this board was thrown, if the weight and force of the rollers were bearing on it. It was doubtless this idea that caused the expert witness to use the term "pushed back" on second thought after he had used the term "thrown back." On cross-examination this expert was asked questions which seemed calculated to draw his opinion of the effect of lifting these rollers off the board while the saws were cutting it, but if he had any opinion on that subject he did not express it.

There is another fact in this case shown in the plaintiff's evidence which, even if the expert's conjecture as to the cause of the accident should be accepted, would still preclude a recovery; that is, this machine had been in operation for ten months or more before the accident and was continued in operation for two months thereafter without repair, cutting about 100,000 feet of lumber daily, yet in all that time no accident of a like character occurred. For many months, according to the plaintiff's testimony, the boxing and the rollers were in the same condition as they were on that day, yet it did its work well and inflicted no injury. There was no evidence that it turned out wedge-shaped boards or that the product of the mill was in anyway unsatisfactory. Even, therefore, if it was possible that the accident was caused as the expert said it might have been caused, still the master was not guilty of neglect of his duty. It is the duty of a master operating ma-

chinery to furnish his servant reasonably safe machinery with which to work, but when he has done so he is not liable if a result which he could not have reasonably foreseen or guarded against occurs, although it was caused by a defect in the machine.  If the defect is known to the master, or would have been known to him if he had exercised ordinary care. he is liable for a consequence that might reasonably have been expected to result from the defect, but if it is a result which he could not reasonably have expected he is not liable.  How could this master have expected the result that the plaintiff claims did come from this worn boxing, when, after long use before and immediately after, with the machine driven to its full capacity, nothing like it ever occurred?

In the brief for respondent the learned counsel make a strong argument based on the theory that the plaintiff was a green hand, that it was negligence to put him to do that work which required skill and experience.  That argument is almost a confession that it was a lack of careful operation that caused the accident.

We do not care to discuss the evidence on that point, however, because that question is not in this case.  The defendant is not in court to answer that charge of negligence.  There is nothing in the petition on which to base such a charge nor was the case tried on that theory in the circuit court.  If authorities are desired to sustain the proposition that the plaintiff can not allege one act of negligence in his petition and recover on proof of another totally different act, they will be found by reference to the brief of appellant's counsel.

Whilst the plaintiff's evidence fails to show the cause of the accident, that of the defendant does show it quite satisfactorily.  From the description of the machine and its operation, as given in the evidence on both sides and illustrated by the model used in the oral

argument, it appears that these dead rollers were necessary to hold the board against the saw and prevent the cutting force of the saw from throwing it back. The force of the saw was in the direction of the operator. If that force should strike the board when there was nothing to hold it down, it would be thrown back, and, therefore, if the operator should carelessly pull the lever and raise the roller the result would naturally be just what did occur.

There are other points presented in the briefs but the conclusion we have reached on the point above discussed renders a consideration of the others unnecessary.

The judgment is reversed. *Brace, P. J.,* and *Lamm, J.,* concur; *Marshall, J.,* not sitting.