HENRY DOWNING v. LOOSE-WILES BISCUIT COMPANY, Appellant.—
8 S. W. (2d) 884.

Division Two, July 20, 1928.

*Jones, Hocker, Sullivan & Angert* and *Willard A. McCaleb* for appellant.

*Mark D. Eagleton, F. Gerritzen* and *Hensley, Allen & Marsalek* for respondent.

DAVIS, C.—This is an action for damages for personal injuries, resulting from the blow of a hammer upon a hatchet used as a chisel, which caused a steel sliver to fly and pierce plaintiff's eye so that its vision is obscured. The jury awarded plaintiff $15,000, and defendant appealed from the judgment entered on the verdict.

The evidence adduced warrants the finding that, on September 25, 1924, plaintiff. a negro, then twenty-two years of age, had been in defendant's employ for three or four days. His wages were eighteen dollars a week. Hired by the foreman of the tin shop, his duties consisted in shearing brass parts from cans, which cans were to be destroyed. It develops that shears were used to cut the brass from cans. The shears rested upon and were fastened to, a table by means of a metal strap about an inch wide, nailed to the table. The shears, about twenty-eight inches in length, were operated by means of a handle, similar to the handle of a pump. The nail heads were driven into the wood of the table.

The plaintiff, who was inexperienced, was working with a white man named Seibert, hired the day after plaintiff began his service. In the forenoon of the day he was injured, plaintiff complained to the foreman that the shears were set too low. The foreman agreed to raise them, telling plaintiff he would show him the way. Subsequent to the noon hour, at the suggestion of Seibert, plaintiff saw the foreman and requested a claw-hammer with which to pull the nails, the foreman responding that he did not have one. Upon informing the foreman that the nails were too deeply imbedded in the wood, and that a claw-hammer was necessary, the foreman said to plaintiff, "Well, use the hatchet as a chisel." In instructing plaintiff in the method of using it as a chisel, the foreman said, "Place the blade of the hatchet against the nail and take the hammer and hit it, and you can cut the nails off and remove the strap from the shears." On returning to the table, plaintiff communicated to Seibert the advice of the foreman. As suggested, using the hatchet as a chisel and hitting it with the hammer, Seibert severed the heads of two nails. He then said to plaintiff, "You try some." Plaintiff, adopting the same method, placed the blade of the hatchet against the head of a nail and while engaged in thus cutting it off, a sliver of steel flew from the hatchet

and pierced the eye, leaving it with a vision able to distinguish light only. Other pertinent facts, if any, will be stated in the opinion.

I. Defendant first takes the position that a verdict should have been directed in its behalf. Four postulates are urged to support the contention thus: (a) The master performs the full measure of his duty to the servant when he exercises ordinary care to furnish his servant with reasonably safe tools and appliances; (b) The master is only required to exercise care against such occurrences as may reasonably be anticipated; (c) The risk involved by striking steel on steel is commensurate with the degree of force applied and the master could not, by any rule known to the law, be required to divine what amount of force would be exerted by the respondent in removing nails from the wooden table, or that it would be necessary to exert sufficient force to break the tools; (d) There was here involved a simple operation with simple tools, and the resulting risk depended entirely on the force exerted and the latter circumstance was wholly within the control of plaintiff.

Turning to the amended answer, we find that it avers, in connection with plaintiff's negligence and the *quantum* of force he used in striking the hatchet with the hammer, together with the use of them, that plaintiff knew, or by the exercise of ordinary care could have known, that there was danger of chips of metal flying from said hatchet and injuring him. In addition thereto, the foreman, defendant's witness, stated that using the hatchet as a chisel and hitting it with the hammer was an improper way; that a man with sense or mechanical ideas would not have used the method; that the method used was hazardous, because the very thing that happened was likely to happen; that a hatchet is not made to use as a chisel and that the method of work, besides being improper, was unsafe and dangerous.

On a demurrer to the evidence, the operative rule forces us to accept plaintiff's evidence as true, even though contradicted by defendant's evidence, and, if it develops a prima-facie case, the case goes to the jury. And where defendant refuses to stand on the demurrer to the evidence at the close of plaintiff's case, and takes the affirmative adducing proof, a demurrer to the evidence at the close of the whole case searches all the evidence introduced to determine whether plaintiff has made a submissible case. [Stauffer v. Railroad, 243 Mo. 305, 147 S. W. 1032; Anderson v. Davis, 284 S. W. 439.]

A review of the answer and the evidence determines that defendant knew that the use of the hatchet as a chisel by striking it with the hammer to cut off the nail heads was an improper method of work, hazardous, unsafe and dangerous in that steel slivers were likely to fly from them Cast with this knowledge, defendant, as the evidence

tends to show, instructed plaintiff, an inexperienced man, to use the hatchet and hammer in the manner aforesaid for that purpose. It is not a question of whether defendant anticipated the particular injury, but whether it anticipated that slivers would fly from the tools. These were common tools, but they were made of steel, as defendant's evidence shows, and thus more likely to chip when struck together than when put to their ordinary use on impressible objects. Knowing that their use was dangerous, defendant ordered the method of work without warning him of the danger. Knowing the danger of chips flying, defendant could have anticipated that plaintiff, in cutting off the nail heads, was likely to use such *quantum* of force in striking the hatchet with the hammer as to cause the tools to chip. The record does not advise us that the tools were used with unwarranted force. We think plaintiff made a submissible case.

II. Defendant complains of plaintiff's principal instruction purporting to cover the whole case. While it is somewhat lengthy, we think the objections made call for its recital. It reads:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was in the employ of the defendant on the 25th day of September, 1924, and that while working within the line and scope of his employment, if you so find, he was injured when a piece of metal flew off the hatchet which he was then and there using, striking him in the left eye; and if you further find that at and prior to the time plaintiff was injured the defendant did furnish and provide said hatchet for the purpose for which the plaintiff was then and there using it, if you do so find, and that said hatchet for said purpose was unsafe and dangerous and not reasonably safe in the sense that when struck by the hammer mentioned in evidence a piece was likely to fly from said hatchet and to injure the plaintiff; and if you further find that on the occasion in question plaintiff was ordered to strike said steel hatchet with said hammer as aforesaid, and that in thus ordering plaintiff to strike said hatchet under the circumstances aforesaid, if you do so find, the defendant failed to exercise ordinary care and was guilty of negligence; and if you further find that plaintiff was ordered to strike said hatchet on the face thereof with said hammer and that said method of doing said work was not reasonably safe, and was unsafe and dangerous, and that in requiring plaintiff to adopt said method, if you do so find, the defendant failed to exercise ordinary care and was guilty of negligence; and if you further find and believe from the evidence that plaintiff was inexperienced, ignorant and unaware of the dangers incident to doing the work in the manner aforesaid, if you do so find, and that the defendant did fail to warn the plaintiff

of the aforesaid dangers, if you so find, and in so failing to warn the plaintiff, if you do so find, the defendant then and there failed to exercise ordinary care and was guilty of negligence; and if you further find that on the occasion in question plaintiff, while exercising ordinary care for his own safety, if you so find, was injured in the manner aforesaid as a result of negligence on the part of said defendant (if you find defendant was guilty of negligence) in furnishing and providing said hatchet and in ordering and directing plaintiff, if you do so find, to strike said hatchet with the hammer aforesaid, and in adopting the aforesaid method, if you do so find, that plaintiff was then and there using, and that the defendant was guilty of negligence in failing to warn the plaintiff as aforesaid, if you do so find, then your verdict will be in favor of the plaintiff and against the defendant.''

We will consider the several errors alleged in their order.

(a) It is said that the instruction is faulty because it authorized the jury to find defendant guilty of negligence in failing to warn plaintiff of the risk involved in striking the hatchet with the hammer. Defendant's theory is that the master owes the servant *no duty to warn unless the master was required to anticipate that risk to the servant was likely to arise.* In view of what we have said, the contention is evidently without merit. The foreman stated that a hatchet is not made for chisel purposes, that a chip might fly from the hatchet or hammer, and that the very thing that did happen was likely to happen. Imbued with this knowledge, the foreman, the *alter ego* of defendant, upon instructing plaintiff to so use the hatchet and the hammer, should have anticipated the occurrence and should have advised plaintiff of the danger attending such use of the tools.

(b) Defendant again objects to the instruction because it failed to require a finding that defendant knew, or by the exercise of ordinary care could have known, that the use of the hatchet was unsafe and dangerous, and that such force would be required as would likely involve the risk of the hatchet chipping, permitting particles to fly into the eye. It supports its contention by the argument, first, there was no implication of knowledge as plaintiff failed to show the hatchet was defective prior to its immediate use; second, actual knowledge was consequently necessary and the proof failed to show it; third, knowledge of the defect, actual or implied, was a necessary element, which the instruction failed to include.

We agree with defendant that actual or implied knowledge of the danger emanating from the use of the tools in the manner described was an antecedent condition to its liability. We do not agree, how-

ever, that the record demonstrates that such use of the tools was not dangerous. The foreman's evidence develops that he, and therefore defendant, knew the danger arising from such use, for he said that from such use chips were likely to fly and to result in the very thing happening that did happen. The record fails to show, as we have said, that plaintiff used more force in striking the hatchet with the hammer than was necessary. But the contention of defendant is that the instruction fails to require the jury to find that defendant knew the danger emanating from using the tools in such manner. It tried the case on the theory that such use was dangerous, for its answer avers that plaintiff knew, or could have known, that there was danger of chips of metal flying from the hatchet and injuring him. The foreman's testimony concedes he knew that such method was dangerous. Under these circumstances, even if the instruction failed to require the finding, the omission in that regard was not prejudicial error.

III. Defendant thinks the damages awarded are excessive. The evidence runs that plaintiff's left eyeball shows a penetrating wound, two scars, and adhesions of the iris and the cornea. The vision of the left eye is zero and permanent, although he has perception of light. This was verified with the ophthalmoscope. Perception of light signifies total industrial blindness. The right eye is normal. The injury to plaintiff's left eye caused great pain. The doctor stated that some do and some do not suffer pain subsequently from such an injury. An operation was performed, removing the steel sliver from the eye. From September to March plaintiff was unable to work. He was employed a short time at a bowling alley setting up pins, and since then he has had two jobs. Later he was refused employment due to his eye. Between September 25, 1924, and December 23, 1925, he had employment six months. Plaintiff stated on the trial that he suffered pain intermittently, especially when exposed to the light and the air. His wages at the time of the injury were eighteen dollars a week. He was then nearly twenty-two years of age.

In view of the well-known fact that money, since our advent into the World War, has been a much cheaper commodity than formerly, we are unable to say that, for the loss of the vision of an eye, a verdict for $15,000 is now excessive. It is true that in Adams v. Railroad, 287 Mo. 535, 229 S. W. 790, this court, for the loss of vision of an eye, reduced a verdict of $20,000 to $12,500. That accident occurred in 1918, when money value was still high. In Loduca v. Railway, 289 S. W. 908, the inquiry before this court involved merely the reasonableness of a $12,500 judgment for a similar injury. In Russell v. Railroad, 295 S. W. 102, a $15,000 verdict was held not

excessive where an injury to one eye not only obscured its vision, but seriously affected the vision of the other. The inquiry, however, merely involved the reasonableness of the verdict. In this case, besides total industrial blindness in the injured eye, the plaintiff suffers at times and upon occasions severe pain. Considering all the facts and circumstances, we cannot say the verdict is excessive.

It follows that we must affirm the judgment. It is so ordered. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur, except *Walker*, *J.,* who dissents.