LAWRENCE DOCKERY, RESPONDENT, v. W. G. WOODSMALL, ET AL., APPELLANTS.*

Kansas City Court of Appeals. December 7, 1928.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2708, p. 764, n. 76, 80; Master and Servant, 39CJ, section 1315, p. 1121, n. 78.

*Lawson & Hale* and *L. A. Warden* for respondent.

*McCune, Caldwell & Downing* for appellants.

ARNOLD, J.—This is an action in damages for personal injury.

Defendants W. G. and Francis Woodsmall, father and son, were partners doing business under the firm name of Woodsmall & Woodsmall, and on March 18, 1925, said partnership was engaged under contract in making excavations for the construction of abutments for a bridge on the state highway crossing Honey Creek, a few miles south of Trenton, Grundy county, Mo. Plaintiff was a common laborer in the employ of defendants and was engaged with others in digging an excavation for an abutment of said bridge.

It appears that plaintiff and another laborer named Cherry were engaged in digging this excavation which was to be used in making a concrete pier to support an abutment to the bridge. The testimony shows that plaintiff had personally broken the ground for this particular excavation and at the time of the injury which is the basis of this action, he had been digging there for a day and a half. The excavation was nearly completed and was about thirteen feet deep by eleven feet square. When the hole was about eight feet deep defendants had caused a sheeting to be placed in it composed of boards ranging from twelve to fourteen feet in length and arranged perpendicularly against the sides of the excavation. These were supported and held in place at three points—one near the top, one near the center and one near the bottom of the excavation—and these supports were called "whaling." The purpose of this box-like construction was to prevent the caving in of the sides of the excavation. It appears this sheeting was so placed as to leave spaces between some of the boards thereof. As the excavation became deeper the sheeting was driven down to conform to the added depth. When first placed, the tops of the boards extended above the upper surface of the hole and this extension was diminished as the hole deepened, the sheeting being driven down. At the time of the accident the sides of the excavation were thus walled up by sheeting, supported by the "whaling."

Plaintiff and his co-laborer Cherry, while working in the excavation, were required to throw the material dug out by them over the top of the sheeting and out through an opening about twenty inches wide. Plaintiff testified, and in this he was corroborated by other witnesses, that there was no platform provided in the excavation onto which the dirt might be thrown and from there relayed out of the ditch. It is also in evidence there was no windlass and bucket whereby the dirt could be lifted out of the excavation after being dug from the bottom. There was evidence on the part of defendants to the effect there was a platform and that men were engaged in throwing dirt therefrom about the time of the occurrence in question.

As plaintiff and Cherry were shoveling from the bottom of the hole, a quantity of dirt consisting of sand and gravel struck plain-.

tiff in the face. Plaintiff states he did not see it and does not know from whence it came—whether thrown by Cherry or not; that he, plaintiff, was just in the act of raising his shovel for the toss of its contents when he was struck. The testimony shows the laborers were shoveling alternately, one throwing the earth from his shovel while the other was loading his. It appears that just before the injury, a quantity of the earth they were attempting to show from the ditch fall back without going over the top. Plaintiff had thrown out a shovelful, obtained another, straightened up and looked upward as he prepared to swing his shovel, when he was struck by a large quantity of earth, sand and gravel which came downward from the top of the excavation.

One Terry, a disinterested spectator, testified to the effect that immediately before the accident he had seen quantities of the same material as struck plaintiff drop back into the excavation, as plaintiff and his fellow workman, Cherry, attempted to throw it over the top. It is in evidence that other workmen were engaged in removing the dirt from the surface after it had been thrown from the excavation, using as part of this process of removal a team and scraper. It is shown the witness Terry was standing near the top of the excavation and saw the substance fall back, though he did not actually see it strike plaintiff. Terry testified that immediately thereafter, he saw plaintiff trying to wipe sand, gravel, mud and dirt from his face and eye, and that plaintiff at once climbed out of the excavation with dirt on his face and in his eye; that he saw Mr. Woodsmall, senior, lay plaintiff on his back and wash his face and eye.

There was evidence on plaintiff's behalf to the effect that the usual and customary method of conducting work similar to that in which plaintiff was engaged is to provide a platform part of the way up the excavation so that the earth could be shoveled thereon and from there thrown out. The petition alleges that as a result of the injury plaintiff has entirely lost the sight of his right eye and that the sight of his left eye is impaired.

This suit was instituted in the circuit court of Saline county, the home of defendants and by change of venue was taken to Clay county where it was tried to a jury. At the close of plaintiff's evidence and again at the close of all the evidence, defendants asked an instruction in the nature of a demurrer, both of which were overruled. The cause was submitted to the jury and the verdict was for plaintiff in the sum of $2350. Motions for a new trial and in arrest were overruled and defendants have appealed.

The negligence charged in the petition is (1) failure to furnish plaintiff a safe place in which to work; (2) failure to furnish safe appliances; (3) ordering plaintiff to continue at said work when

defendants knew, or by the exercise of ordinary care should have known of the danger; (4) in washing plaintiff's eye after the injury with filthy water; (5) in directing plaintiff and his fellow workman to proceed with the work when defendants knew . . . that such attempt on the part of plaintiff and his fellow workman was dangerous and likely to cause them serious, permanent and lasting injury; and (6) in failing to provide a bucket, box or tub or other container for hoisting the earth, sand and gravel from the bottom of said excavation to the top thereof; and in failing to provide a horizontal platform in such excavation for use as a sort of relay station from which the excavated earth, sand and gravel could be safely thrown.

The answer was, first, a general denial, and for affirmative defense pleads assumption of risk, negligence of a fellow servant and contributory negligence. The reply is a general denial.

It is agreed the only question for our consideration is whether the trial court erred in overruling the demurrers offered by defendants at the close of plaintiff's evidence and again at the close of all the evidence. In considering a demurrer to a plaintiff's evidence in a personal injury suit, it is our duty to examine the evidence and determine whether such evidence was sufficiently substantial to support the allegations of his petition; and, in so doing, we must regard plaintiff's evidence as true and allow him every reasonable inference to be drawn therefrom; and, where a demurrer is offered at the close of all the evidence, such presumption is to be drawn also from defendant's evidence where favorable to plaintiff's cause of action. [Zumwalt v. Railroad, 266 S. W. 717; Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1165; Stauffer v. Railroad, 243 Mo. 305, 147 S. W. 1032; Evans v. Wheel Co., 273 S. W. 749; Downing v. Biscuit Co., 8 S. W. (2d) 884.]

It is defendants' position that the evidence fails to show that negligence of defendants, if any, was the proximate cause of plaintiff's injury; that, under the evidence adduced the injury might have been produced by one of two or more causes, for only one of which defendants would be liable, and that plaintiff has failed to prove his injury arose from a cause for which defendants would be liable. Defendants cite numerous decisions in support of this position and it is urged that in order for plaintiff to recover, the burden was upon him to prove that his injury was received because defendants did not provide a platform in the excavation in question. In other words, it was necessary for him to prove that the material which struck him did so because there was no platform, such as described by the evidence, in the hole. The evidence on this point was conflicting, plaintiff's testimony being there was no such platform provided, and in this he was corroborated by his witness Terry. Defendants' evidence on this point was to the contrary, but in considering the demurrers we must accept the evidence in plaintiff's be-

half as true, and proceed upon that theory. Defendants insist their side of this controversy is strongly supported by plaintiff's own testimony. He testified he had filled his shovel and was on the point of tossing it up, and at that instant he looked up and was struck by falling earth, gravel and sand. Defendants quote from plaintiff's testimony on cross-examination as follows:

"Q. You don't claim there was any rock hit you, do you? A. I don't know what hit me. I know it was an awful blow. I know that.

"Q. But you don't know what it was? A. Not just exactly. I know it was dirt and sand. I know that was what was left in my eye.

"Q. You don't know whether the stuff that hit you came out of Cherry's shovel, do you? A. I couldn't say.

"Q. You don't know whether it came over the top of the hole? A. Well, it felt like to me it came down.

"Q. I know, but you don't know where it came from? A. No, sir, I couldn't say.

"Q. Whether off of Cherry's shovel or top of the hole or whether it fell out of the side wall? A. I don't know. All I know is I got the lick.

By THE COURT: "Did you see it coming? A. No, sir."

In support of the rule that unless the plaintiff has offered proof tending to show negligence of defendants was the proximate cause of the injury, he has not made a case for the jury, defendants cite State ex rel. v. Cox, 276 S. W. 869, 871; Pronnecke v. Pub. Co., 291 S. W. 139; Sabol v. Cooperage Co., 282 S. W. 425. In the Pronnecke case the plaintiff based his recovery upon the allegation that while he was in an elevator in his master's place of business, a substance of some weight was negligently and carelessly allowed by defendant to drop and strike plaintiff on the head. The plaintiff testified he was in the elevator doing some work and something hit him on the head; that was all he knew about it. The court held that, as the testimony disclosed merely that plaintiff was struck by an object, without identifying the object or showing the source or cause of its precipitation, or whether the object fell from above or was flung from the side, there was no causal connection shown, and plaintiff had made no showing entitling him to go to the jury. The court further said:

"Even in a *res ipsa loquitur* case there must be a gathering of circumstances from which it may be fairly inferred that plaintiff was struck by an object and injured in such a way as to established negligence on the part of the defendant and show a causal connection between the two." [To the same effect are Warner v. Railway, 178 Mo. 125, 77 S. W. 67; Van Bibber v. Swift & Co., 286 Mo. 317, 228 S. W. 69; Hamilton v. Ry. Co., 279 S. W. 177; Trigg v. Land Co., 187 Mo. 227, 86 S. W. 222.]

These cases state the correct rule in this respect, but the facts therein upon which the rulings are based differ materially from those presented in the case at bar. Here witness Terry testified that he saw the dirt hit on the "whaling" and fall back and instantly saw plaintiff rubbing his eye and face in an effort to get the sand and gravel out of his eye—the same substance as was being excavated and thrown from the excavation. As to what was in his eye and the fact that the dirt hit him, plaintiff was corroborated in his statements by witnesses Herman Duncan, Frank Buster and Mr. Woodsmall, Sr. In addition to the testimony in plaintiff's behalf just referred to, it was shown that owing to the depth of the excavation, the workmen were unable at all times to throw the dirt over the top of the sheeting; that some of it struck the sides thereof and fell back. The evidence further shows it was the custom and practice in the vicinity of Grundy county, in making pier excavations, after the hole had reached a depth of six or eight feet, to provide a platform from which to relay the dirt to the surface. The case was tried upon the theory that if defendant failed to have a platform, or a bucket and derrick in the excavation, it was dangerous for persons working in the excavation to throw, or attempt to throw the excavated material over the top of the sheeting. There was substantial evidence on plaintiff's behalf from which the jury reasonably might conclude the proximate cause of the injury was defendants' failure to provide plaintiff a safe place in which to work.

We think defendants' position that the injury might have been caused by dirt falling from the surface of the excavation, or from spaces between the sheeting, leads us too far into the realm of speculation and conjecture. The jury was entitled to consider all the facts and circumstances in evidence and plaintiff was entitled to all reasonable conclusions to be drawn therefrom. [29 Cyc. 622; Sabol v. Cooperage Co., supra; Stern v. Assurance Corp., 249 S. W. 739; Jaquith v. Plumbing Co., 254 S. W. 89.] We hold, therefore, the trial court did not err in overruling the demurrers to the evidence and submitting the case to the jury. This also rules against defendants their second point, to-wit, that the court erred in overruling defendants' motion for a new trial and in arrest of judgment.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.